# Freeman's Estate (No. 1).

*Wills—Life estate—Intestacy—Widow's rights.*

1. Where a testator gives to his wife all his real and personal estate "to take and use the same and the net income thereof during all the term of her natural life," without any gift over, the widow's personal representative after her death is entitled to take one-third of the husband's entire personal estate absolutely. In such a case the widow has the right to accept and enjoy her life estate in the whole without giving up or renouncing her right under the intestate law to such of the property as was not disposed of by the will. The fact that she did not during her lifetime have one-third of the personal property set aside for herself absolutely, and that at the request of some of her children she had securities placed in her name as life tenant, will not justify a finding that the widow had so construed the will as to give her merely a life estate.

*Decedents' estates—Absence of party in interest—Death—Presumption —Finding of fact.*

2. Where a person leaves his home and place of residence for temporary purposes, and is not seen, heard of, or known to be living for the

term of seven years thereafter, at the end of that time, he is presumed to be dead.

3. Where the son of a decedent has been absent and unheard of for more than seven years after his father's death, but there is evidence that he had been heard of within three or four years prior to his father's death, a finding of the orphans' court that the son survived the father will not be reversed. In such a case the son's share of the personal estate of his father may be distributed directly to the personal representative of his mother.

Argued Jan. 7, 1910. Appeal, No. 246, Jan. T., 1909, by Anna Dimond Freeman, from decree of O. C. Phila. Co., Jan. Term, 1907, No. 48, dismissing exceptions to adjudication in Estate of Charles D. Freeman, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZIS-KER, JJ. Affirmed.

Exceptions to adjudication.

ANDERSON, J., the auditing judge, stated the facts to be as follows:

Decedent died May 1, 1891, having first made and published his last will and testament, by which he bequeathed his estate to his wife for life (see Freeman's Est., 16 Pa. Dist. Rep. 873), and appointed her executrix thereof, but made no provision as to what was to become of his estate after her death, and it therefore passes under the intestate laws, the widow having died June 26, 1906.

Testator left surviving, his widow, S. Augusta Freeman, and five children: Isobel F. Frost, Marion F. Wills, Augusta F. Howes, Henry B. Freeman, who has since died, and Canfield Darwin Freeman. The question was raised at the audit as to whether his son Canfield Darwin Freeman survived him. Testimony of the daughters of the decedent was produced, showing that the son left the city about 1883, having been last heard of three or four years later. Against this testimony was produced a Supreme Court paper-book in the Estate of Henry G. Freeman (181 Pa. 405), which was a proceeding under the Price Act to authorize the trustee in the estate of Henry G. Freeman, father of the decedent, to execute a lease of certain real estate; which paper-book con-

tained an affidavit by the widow and children of the present decedent (including those who now assert they knew nothing of the death of Canfield Darwin Freeman, and have heard of him three or four years after his departure), in which they stated that they were the only heirs of this decedent. The burden being upon the parties alleging the death of the son in the lifetime of the father, either to produce evidence of his death, or facts which show a presumption of death, and the evidence being that the son had been heard of in less than seven years prior to the death of the father, the auditing judge is unable to find either that the son was dead at the death of his father, or that a presumption had arisen to that effect. It will be necessary, therefore, to distribute the estate to the persons entitled under the intestate law; to wit, S. Augusta Freeman, widow (see Reed's Est., 82 Pa. 428; Carmen's Est., 11 W. N. C. 95; Grim's App., 109 Pa. 391; Bell's Est., 147 Pa. 389), the children now living and the estates of those deceased, including the son about whose death the controversy arose: Esterly's App., 109 Pa. 222; Sherwood's Est., 206 Pa. 465.

On exceptions to the adjudication, ASHMAN, J., modified the conclusion of the auditing judge as to the distribution to the estate of the son last referred to in the adjudication as follows:

"Ordinarily the share of Darwin Freeman would be payable to an administrator of his estate. Under existing circumstances it will be distributed directly to those entitled as by way of intestacy. The distribution directed by the auditing judge is to this extent modified, and the share of Darwin is awarded to the estate of his mother, the widow of the testator, security being first required to protect the possible interest of the missing son or his legal representatives.

"The exceptions are dismissed, and the adjudication as modified is confirmed."

*Error assigned* was in dismissing exceptions to adjudication.

*John I. Rogers,* with him *J. B. Colahan* 3d, for appellant.— Where all surviving members of a family declare under oath

in a judicial proceeding as to the death, before a certain date, of a former member of the family, the court should not disregard such affirmative evidence and resort to the rule as to presumption of death after seven years' unexplained absence: Hickman v. Upsall, L. R. 20 Eq. 136; Burr v. Sim, 4 Whart. 150; Bradley v. Bradley, 4 Whart. 173; Whiteside's App., 23 Pa. 114; Holmes v. Johnson, 42 Pa. 159; Hershey v. Shenk, 58 Pa. 382; Esterly's App., 109 Pa. 222; Welch's App., 126 Pa. 297; Schoneman's App., 174 Pa. 1; McCausland's Est., 213 Pa. 189.

Where an intestacy occurs after a gift of the entire estate for life to a widow, without any disposition of the remainder, the devisees of the widow are not entitled to one-third of the intestate's estate in addition to the life interest in the entire estate in the absence of any lapse or void disposition of the remainder by the testator: Carmen's Est., 11 W. N. C. 95; Grim's App., 109 Pa. 391; Bell's Est., 147 Pa. 389; Anderson's Est., 185 Pa. 174; Greiner's App., 103 Pa. 89; Osmond's Est., 161 Pa. 543; Darlington v. Darlington, 160 Pa. 65; Wessel's Est., 26 Pitts. L. J. 45; Devine's Est., 199 Pa. 250; Van Dyke's App., 60 Pa. 481; Young's Est., 202 Pa. 431; Boileau's Est., 201 Pa. 493; Goodbread's Est., 9 Pa. Dist. Rep. 710; Freeman's Est., 220 Pa. 343.

*Henry Budd,* with him *Walter C. Blakely* and *A. S. L. Shields,* for Marion F. Lukens, Isobel F. Frost and Augusta F. Howes, appellees.

*Robert D. Maxwell,* for Henry Tatnall and J. Ernest Smith, executors of S. Augusta Freeman, appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, February 14, 1910:

The testator, Charles D. Freeman, died May 1, 1891, leaving a will wherein he provided as follows: "I give and devise and bequeath all my real and personal estate to my wife to take and use the same and the net income thereof during all the term of her natural life and without giving security as life tenant thereof." He left him surviving a widow, S. Augusta Freeman, and five children, Henry B. Freeman, Isobel

F. Frost, Marion F. Wills (now Lukens), Augusta F. Richardson (now Howes), and Canfield Darwin Freeman. The widow enjoyed the income of the entire estate until her death on June 26, 1906. In 1905, the widow, at the request of her children, surrendered the certificates of the securities in her husband's estate and obtained new ones in her own name as "life tenant." Henry B. Freeman, one of the sons, died in the lifetime of his mother leaving a widow. In June, 1908, the personal representatives of the decedent filed their account showing a balance for distribution. This balance was awarded, one-third of the principal to the estate of the widow, and the remainder in equal shares to Isobel F. Frost, Marion F. Wills, Augusta F. Howes, the estate of Henry B. Freeman, deceased, and to Canfield Darwin Freeman, "if living, and to his personal representatives if deceased." Exceptions were filed, and it was contended that under the evidence produced it should have been found as a fact that Canfield Darwin Freeman predeceased his father; and that it should have been decided as a matter of law that the widow was restricted to a life interest, and her estate was not now entitled to share in the distribution. The auditing judge found as a fact that Canfield Darwin Freeman left the city of Philadelphia about 1883, and had been last heard from three or four years later, stating: "The burden being upon the parties alleging the death of the son in the lifetime of the father either to produce evidence of his death, or facts which show a presumption of death, and the evidence being that the son had been heard of in less than seven years prior to the death of the father, the auditing judge is unable to find either that the son was dead at the death of his father, or that a presumption had arisen to that effect." When the matter came before the court in banc the distribution was affirmed, excepting that the share of Canfield Darwin Freeman was awarded to the estate of his mother, the court stating: "Ordinarily the share of Darwin Freeman would be paid to an administrator of his estate. Under existing circumstances it will be distributed directly to those entitled as by way of intestacy. The distribution directed by the auditing judge is to this ex-

tent modified, and the share of Darwin awarded to the estate of his mother, the widow of the testator, security being first required to protect the possible interest of the missing son or his legal representatives."

While the learned judge who last spoke for the orphans' court affirmed the distribution as awarded by the auditing judge, he arrived by a different path at the conclusion that Canfield Darwin Freeman, or his estate, was entitled to a distributive share, and in so doing he criticised the credibility of certain of the witnesses who had testified that this son had been last heard of within less than seven years prior to the death of his father; but he did not modify or set aside the findings of fact to that effect made by the auditing judge. Exceptions that "The learned court erred in finding that the son, Canfield Darwin Freeman, had left the city about 1883, having been last heard of three or four years later," and, "The learned court erred in not finding that the son, Canfield Darwin Freeman, was dead at the date of the death of the decedent, to wit, May 1st, 1891," were dismissed, thereby affirming the findings of the auditing judge. These findings not having been changed by the court below, and an examination of the evidence failing to show any manifest error therein, we must take it as a fact that Canfield Darwin Freeman survived his father.

The rule is, where a person leaves his home and place of residence for temporary purposes, and is not seen, heard of, or known to be living for the term of seven years thereafter, at the end of that time he is presumed to be dead: Burr v. Sim, 4 Whart. 150; Bradley v. Bradley, 4 Whart. 173; McCausland's Est., 213 Pa. 189. The appellant contends that the learned judge below fell into error by a misstatement of this rule. It is sufficient to say as to this, that it was but harmless error, as it did not change or affect the distribution under review.

On the question of the share awarded to the estate of the widow. The decedent disposed of his property for the life of his wife, without any disposition over, thus leaving an intestacy after the life estate. The property vested by virtue

of the intestate law subject to the life estate given by the will, one-third in the widow absolutely, and the remaining two-thirds in the children. The widow had the right to accept and enjoy her life interest in the whole without giving up or renouncing her right under the intestate law to such of the property as was not disposed of by the will: Reed's Est., 82 Pa. 428; Carmen's App., 2 Pennypacker, 332. Her right vested immediately upon the death of her husband, and she could, if she so desired, have had set aside for her absolutely one-third of the personal property. The fact that she did not see fit to do so will not bar her personal representatives from insisting upon this right for the benefit of her estate. But, the appellants contend that the widow and the others in interest have been acting upon a different construction of this will, and they are now entitled to the protection of the rule, "where a will has two possible constructions and the parties have acted upon one, a court should not depart therefrom." The only circumstances that give a semblance of justification to this contention are: first, the fact that the mother did not during her life formally set aside for her separate use one-third of the personal assets of the decedent's estate; and, next, that at the request of some of her children she had the securities placed in her name as "life tenant." These facts, when taken into consideration with their surroundings, do not justify a finding that a construction restricting the widow to her life estate had been put upon the will by the persons in interest. The evidence indicates that the mother's actions in relation to these assets were forced upon her by the attitude of her children; and it appears that she was told by her son Henry, who acted as her legal adviser, that she had no right to sell any of the assets. Although incidentally referred to, this matter was not passed upon in Freeman's Estate, 220 Pa. 343; the question was not then before us, and we did not decide the extent and the measure of the estate of the children, or that the widow did not share in that part of the decedent's estate as to which he died intestate; the only point determined was that the widow did not have an absolute interest in the whole of the testator's property.

In an opinion this day filed in another appeal in this estate, we decide that the personal representatives of the widow are entitled to certain accumulations of income which were awarded by the court below to the children, and for that reason the decree in its entirety cannot be affirmed. On the questions raised in the present appeal as to the right of the son Canfield Darwin Freeman or his estate, and as to the right of the estate of the widow to the awards made to them respectively, we find no reversible error. The assignments of error are overruled and to this extent the decree is affirmed.