distribution. They were ordered to pay the entire share of the income over to the son, and their powers and duties ended there. The wife was not named as a beneficiary, except in the event of her husband's death, when the trustees were instructed specifically what to do in the contingencies that might then arise. The cases cited by respondent are those wherein the trustees had duties to perform in respect to the fund and were charged with the responsibility of seeing that it was applied to certain designated purposes. That is not this case. Here the only direction to the trustees is to pay to the son. Nor is there any method by which it may be determined that the testator meant that any specified part of the income should go to his daughter-in-law. Whatever rights plaintiff may have to support from her husband must be determined in an appropriate action for separation, when the requisite facts to justify an allowance of alimony can be established. Under the will of Julius Oberndorf she took nothing directly. The trustees were to set apart no sum for her support, and she is without recourse against the estate. We are not now concerned with the question of what her husband's duties towards her may be, whether under the will or apart from it."

The motion to dismiss the complaint must be granted. Findings passed upon.

---

## In re BENJAMIN.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. DEATH (§ 2\*)—PRESUMPTION OF DEATH FROM ABSENCE.

An unmarried woman of 34, who in 1873 disappeared from her home without explanation or known cause, taking nothing with her, from whom nothing was afterwards heard, though diligent search was made, will be presumed to have been dead after 7 years from the date of her disappearance.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. § 2.\*]

2. EXECUTORS AND ADMINISTRATORS (§ 507\*)—SETTLEMENT OF ACCOUNTS— MATTERS DETERMINED—DEATH OF ONE OF NEXT OF KIN.

The fact of the death of one of the next of kin should be determined by the Surrogate's Court, when called upon to do so upon a judicial settlement of the account of an administrator, and not necessarily in a separate proceeding for that purpose.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2004, 2005, 2178–2191; Dec. Dig. § 507.\*]

3. DESCENT AND DISTRIBUTION (§ 21\*)—NEXT OF KIN—SISTER.

Where the death of a woman without issue has been judicially determined as of a certain date before the death of her sister intestate the share which she otherwise would have taken must be divided among the intestate's next of kin.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 57–62; Dec. Dig. § 21.\*]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of Mary Benjamin, as administratrix of the goods, chattels, and credits which were of Anna Shannon, deceased. From final decree of the surrogate (77 Misc. Rep. 434, 137 N. Y. Supp. 758), directing deposit of one-fourth of surplus in the state treasury, the appeal is taken. Reversed, and proceeding remanded to Surrogate's Court for decree in accordance with opinion.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

ARGUED before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

F. R. Minrath, of New York City, for appellants.

Robert P. Beyer, of New York City, for respondent.

DOWLING, J.   This is an appeal from a decree of the Surrogate's Court adjudging that it has not been established by adequate proof or with sufficient particularity that Bridget Shannon is dead, or that she did not survive her sister, Anna Shannon, the intestate, and that the remaining one-fourth of the estate of Anna Shannon, reserved by the administratrix pursuant to a prior decree, which would have gone to Bridget Shannon, shall be paid by the administratrix into the treasury of the state for the benefit of the persons who may hereafter appear to be entitled thereto.

The question involved in this appeal is whether, upon the papers presented by the petitioners, it satisfactorily appears that Bridget Shannon had died before the death of the intestate, which occurred on November 12, 1910.   This court has so recently laid down rules as to the presumption of death arising from long-continued and unexplained absence that no further discussion of that question is now required. See Matter of Wagener, 143 App. Div. 266, 128 N. Y. Supp. 164; Cerf v. Diener, 148 App. Div. 150, 132 N. Y. Supp. 1026.

[1]  In this case it appears that Bridget Shannon arrived in America in 1863, being then about 24 years of age.   She obtained employment at Belleville, N. J., in the home of Dr. Ward, where Margaret Fitzpatrick, another sister, was also employed.   She remained with this family for 10 years, or until 1873, when, without a word to any one as to her purpose or intention, with no known or assignable cause, and with no suggestion of any reason therefor, she suddenly disappeared from the place of her employment, leaving behind her a trunk containing her clothes, and taking with her nothing save her then wearing apparel.   She was then unmarried, and there is no suggestion that she married thereafter.   From that time until the time of making the application herein, no letter or message of any kind had ever been received from her.   She had not been seen by any of her family.   They had never received any information as to any other person having seen or heard from her, and she disappeared effectually and completely from human vision.   Were she living, she would now be about 73 years of age.   At the time of her disappearance, her sister, Mary Benjamin, who came to this country with her, was employed and living in the city of Newark, N. J., and she has been in that vicinity ever since.   Her sister, Margaret Fitzpatrick, with whom she worked at Dr. Ward's, visited the Ward household after leaving their employment, and at the time of Bridget's disappearance was living in Orange, N. J., where she lived until 1901, and where her family have ever since resided.   Mrs. Ward, who is still living, has never heard of Bridget since.   Effort has been made by search through the various bureaus of vital statistics, and in insane asylums, as well as by calls upon persons likely to know of her continued existence, to ascertain whether

any trace of Bridget Shannon could be found, but in every instance without success.

Applying the principles laid down in the cases just cited, it seems clear that under the facts in this case Bridget Shannon must be presumed to have been dead at the expiration of 7 years from the date of her disappearance, and at the latest by December 31, 1882, which is 7 years from the latest date, by the most liberal calculation, that can be deemed to have been the time of her disappearance.

[2] That the fact of the death of one of the next of kin should be determined by the Surrogate's Court, when called upon so to do, upon the judicial settlement of the account of an administrator, and not necessarily made in a separate proceeding for that purpose, is determined in the Matter of Wagener, above cited. In this proceeding the citation has been properly published as against Bridget Shannon, if living, or her unknown next of kin, if any there be, and the provisions of section 2523, Code Civ. Pro., have been duly complied with.

[3] Her death without issue at the date mentioned being judicially determined, the share which otherwise would have been hers must therefore be divided among the next of kin of Anna Shannon.

The decree appealed from will therefore be reversed, and the proceeding remitted to the Surrogate's Court for an entry of a proper decree, in accordance with this opinion, with costs to appellant payable out of the estate. All concur.